# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF MARYLAND

RONALD HASKINS      *

Plaintiff      *

v      *      Civil Action No. JKB-15-664

WARDEN RICHARD J. GRAHAM, JR., et al. *

Defendants      *
     ***

## MEMORANDUM

In a memorandum and order dated July 15, 2015, this court denied plaintiff's motion for preliminary injunctive relief, dismissed his claim for retaliatory transfer, and directed defendants to respond to his amended claims for monetary damages for denial of medical care and recommended surgery. ECF 23 and 24. Pending are plaintiff's motion for reconsideration (ECF 29) and defendants' motions to dismiss or for summary judgment (ECF 31) and to seal (ECF 32). Plaintiff opposes the motion to dismiss or for summary judgment (ECF 41) and defendants have filed a reply thereto (ECF 44). No hearing is necessary to resolve the matters pending before the court. *See* Local Rule 105.6 (D. Md. 2014). For the reasons stated below plaintiff's motion for reconsideration shall be denied and defendants' motion to dismiss or for summary judgment, construed as a motion for summary judgment, shall be granted in part and denied in part.

### Background

In his initial complaint, plaintiff claimed he was transferred to Western Correctional Institution ("WCI") for retaliatory reasons and was denied the use of a medically prescribed wheelchair and four-prong cane. ECF 1 and 3. He alleged that denial of the medical assistive devices denied him the opportunity to dine in the prison chow hall, access showers, and to attend medical sick call. ECF 3. The response to show cause filed by counsel for the Department of

Public Safety and Correctional Services established that plaintiff was being provided a wheelchair for long distances and a wheelchair pusher as well as a leg brace, a four prong cane, and assignment to bottom-bunk and bottom-tier housing. ECF 12 at Ex. 2. Additionally, it was established that plaintiff was transferred from Jessup Correctional Institution to WCI because he assaulted another inmate which resulted in an infraction for which plaintiff was found guilty as well as an enemy situation which necessitated plaintiff's transfer. *Id*. at Ex. 1, p. 1. Based on this evidence, this court found that the relief sought by plaintiff in his motion for preliminary injunction was already being provided and that his claim for retaliation was without merit. The issue left to resolve is whether defendants subjected plaintiff to cruel and unusual punishment in violation of his Eighth Amendment right through depriving him of surgery, medical supplies for incontinence, and pain medication.

Plaintiff alleges he suffers constant pain and is in fear for his life. ECF 5 at p. 1. He further alleges he was approved for surgery, but it was not performed because he ate something. ECF 22 at p. 1. He claims the surgery was then cancelled and he was told that an updated MRI would be required to determine what would be done for him now. He further states he planned to refuse any outside medical trips until he hears from this court and that he was moved to segregation housing. *Id*. at pp. 1-2. Plaintiff further claimed he was "living in foul conditions" as he was not being given supplies for his urinary and fecal incontinence. *Id*. at p. 2. Specifically, he claimed he was not being given waste bags and the cell window was deliberately welded shut. *Id*. Plaintiff provides a detailed log of his encounters with correctional and medical staff and asserts it establishes both retaliation and deliberate indifference to his serious medical needs.

Defendants provide medical records[1] as well as the affidavit of Dr. Colin Ottey in support of their motion to dismiss or for summary judgment. ECF 31. In addition to the evidence previously provided by Dr. Ottey in his affidavit in support of the response to show cause, he states that plaintiff is seen regularly in the chronic care clinic for pain management and neurology evaluation among other issues. ECF 31 at Ex. 2, p. 2. On May 21, 2015, plaintiff was seen by Beverly McLaughlin, RNP, who noted that plaintiff had received x-rays and was waiting to receive a CT scan as well as a possible anterior cervical discectomy and fusion. *Id*. Plaintiff's diagnoses include cervicalgia (neck pain), cervical spondylosis with lower left-sided weakness and upper extremity weakness, chronic pain syndrome, and cerebrovascular disease. *Id*. McLaughlin put in a request for a prescription for Gabapentin to treat plaintiff's pain. *Id*. The same day, plaintiff was approved for a CT scan to be performed at University of Maryland Medical System ("UMMS"). *Id*. On May 27, 2015, plaintiff's x-rays were read and determined to show moderate degenerative joint disease at C5-C6 and C-6 and C-7 levels. *Id*.

On May 31, 2015, plaintiff was seen by Paula Connors, RN in response to his requests for a wheelchair, medication, and supplies. Connors referred plaintiff for renewal of supplies and he was seen on June 11, 2015 by McLaughlin. *Id*. at pp. 2 – 3. McLaughlin renewed plaintiff's prescription for Gabapentin, but referred his complaints regarding a wheelchair to the Regional Medical Director. *Id*. at p. 3. Plaintiff also complained of pain in his right hand and McLaughlin noted the hand showed weakness and numbness in the first three fingers. *Id*. Additionally, plaintiff's left foot could not fully extend and exhibited weakness. *Id*.

On June 25, 2015, plaintiff refused to go to UMMS for the CT scan scheduled, based on his assertion that he was not seen by a doctor at WCI. *Id*. Although McLaughlin reminded plaintiff several times he had been seen by her and a nurse practitioner several times and

---

[1] Defendants' motion to seal (ECF 32) shall be granted.

reassured him they were doing all they could to help him, plaintiff continued to refuse. *Id*. Plaintiff voiced his disdain over the fact that he had been given a single cell for six years prior to his transfer to WCI. As a result of the stalemate, McLaughlin indicated she would refer plaintiff to the Regional Medical Director for further evaluation. *Id*.

Dr. Robustiano Barrera saw plaintiff on June 30, 2015 and ordered three briefs and three hazard bags per week for plaintiff's incontinence. On July 15, 2015, plaintiff saw Connors in response to his complaints about pain in his right hand, wheelchair issues, and request for more waste bags. *Id*. at p. 4. During this encounter with Connors, plaintiff explained that he needed more red waste bags to place soiled briefs or he would be forced to continue flushing them down the toilet. Connors called the infirmary about providing more waste bags and was informed they could only provide what had been approved. When Connors called her superior regarding the matter, she was advised that plaintiff could not have any additional bags and that he should be instructed to dispose of his briefs in the proper area on his tier. *Id*. When plaintiff received his supplies five days later, he voiced no further complaints. *Id*.

With regard to the pain in plaintiff's right hand, he told Connors that the pain was caused by poor positioning when transferring himself from his bed to his wheelchair and vice versa. Connors provided plaintiff with a warm compress and advised him to avoid putting weight on it or lifting anything heavy. Connors also referred plaintiff to a provider for further evaluation of the pain. *Id*.

On July 27, 2015, plaintiff was seen by Dr. Ottey for a scheduled visit. Plaintiff asked Dr. Ottey to renew his special needs orders and it was noted that plaintiff continued to use a wheelchair for long distances and a quad cane otherwise. *Id*. at p. 5. Although plaintiff complained of pain in his right hand, Dr. Ottey noted that he carried his cane in his right hand.

4

Dr. Ottey also states that plaintiff did not bring his cane to the visit, making it impossible for plaintiff's gait to be tested. At this appointment Dr. Ottey renewed orders for a quad cane and wheelchair for long distances for one year. No changes were made to the medications prescribed to plaintiff. *Id.*

Dr. Ottey states that notwithstanding a few missed doses in February of 2015, plaintiff has regularly received his prescription medication as ordered. He further avers that defendant Janice Gilmore never cancelled the order for plaintiff's wheelchair and that the weekly supplies of briefs and waste bags are appropriate for his condition. *Id.* The pending motion to dismiss or for summary judgment does not address plaintiff's need for surgery, nor does it explain why the surgical option has been abandoned.

On June 3, 2011, plaintiff was given an MRI which revealed bulging discs with osteophytes at levels C3 – C4, C4 – C5, C5- C6, and C6- C7; pressure on the spinal cord at C4 – C5 and C5 – C6; and central canal stenosis at C5- C6. ECF 15-1 at p. 12. It was further noted that the spinal cord appeared normal, but that the stenosis appeared somewhat greater as compared to earlier images. *Id.* The following year, an EMG performed on June 7, 2012 revealed multi-level cervical disk disease with acute radiculopathy around C5 which was noted to be more prominent on the right. *Id.* at p. 10. That evaluation further noted that physical therapy had brought no relief of symptoms and that plaintiff still has severe neck pain with burning sensations in his right hand despite taking Neurontin. *Id.* Neurosurgery evaluation for possible surgery was recommended. *Id.*

Plaintiff was evidently approved for the surgery as indicated in a December 15, 2014 response to an administrative remedy procedure complaint stating that plaintiff's "last surgery" was cancelled because he ate prior to the appointment against the advice of medical staff. ECF

5

15-1 at p. 17. On May 21, 2015, records indicate that plaintiff has a history of cervicalgia and cervical spondylosis and that he was waiting for a CT scan for purposes of a possible ACDF or anterior cervical discectomy with fusion. ECF 32-2 at p. 1. On June 11, 2015, it is again noted that surgery for cervical stenosis was pending. *Id*. at p. 10. While the records also establish that plaintiff has contributed to the delay by refusing to go to UMMS for the required CT scan (*see id*. at p. 15), there is nothing indicated in the record that efforts are underway to reschedule plaintiff for required pre-operative testing and for the needed surgery. Notwithstanding the absence of any mention of a plan to provide surgery to plaintiff, he is described in a record dated June 30, 2015 as "paraplegic incontinent of urine and stools with cervical spinal cord injury." *Id*. at p. 16.

**Standard of Review**

Rule 56(a) of the Federal Rules of Civil Procedure provides that the "court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The Supreme Court has clarified that this does not mean that any factual dispute will defeat the motion. "By its very terms, this standard provides that the mere existence of *some* alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no *genuine* issue of *material* fact." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247-48 (1986) (emphasis in original).

"A party opposing a properly supported motion for summary judgment 'may not rest upon the mere allegations or denials of [his] pleadings,' but rather must 'set forth specific facts showing that there is a genuine issue for trial.'" *Bouchat v. Baltimore Ravens Football Club, Inc.*, 346 F.3d 514, 522 (4th Cir. 2003) (alteration in original) (quoting former Fed. R. Civ. P.

6

56(e)). The court must "view the evidence in the light most favorable to . . . the nonmovant, and draw all reasonable inferences in her favor without weighing the evidence or assessing the witnesses' credibility," *Dennis v. Columbia Colleton Med. Ctr., Inc.*, 290 F.3d 639, 645 (4th Cir. 2002), but the court also must abide by the "affirmative obligation of the trial judge to prevent factually unsupported claims and defenses from proceeding to trial." *Bouchat*, 346 F.3d at 526 (internal quotations omitted) (quoting *Drewitt v. Pratt*, 999 F.2d 774, 778-79 (4th Cir. 1993), and citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 323-24 (1986)).

**Analysis**

The Eighth Amendment prohibits "unnecessary and wanton infliction of pain" by virtue of its guarantee against cruel and unusual punishment. *Gregg v. Georgia*, 428 U.S. 153, 173 (1976). "Scrutiny under the Eighth Amendment is not limited to those punishments authorized by statute and imposed by a criminal judgment." *De'Lonta v. Angelone*, 330 F. 3d 630, 633 (4th Cir. 2003) citing *Wilson v. Seiter*, 501 U.S. 294, 297 (1991). In order to state an Eighth Amendment claim for denial of medical care, a plaintiff must demonstrate that the actions of the defendants or their failure to act amounted to deliberate indifference to a serious medical need. *See Estelle v. Gamble*, 429 U.S. 97, 106 (1976). Deliberate indifference to a serious medical need requires proof that, objectively, the prisoner plaintiff was suffering from a serious medical need and that, subjectively, the prison staff were aware of the need for medical attention but failed to either provide it or ensure the needed care was available. *See Farmer v. Brennan*, 511 U.S. 825, 837 (1994). Objectively, the medical condition at issue must be serious. *See Hudson v. McMillian,* 503 U.S. 1, 9 (1992) (there is no expectation that prisoners will be provided with unqualified access to health care). Proof of an objectively serious medical condition, however, does not end the inquiry.

The subjective component requires "subjective recklessness" in the face of the serious medical condition. *See Farmer*, 511 U.S. at 839–40. "True subjective recklessness requires knowledge both of the general risk, and also that the conduct is inappropriate in light of that risk." *Rich v. Bruce*, 129 F.3d 336, 340 n.2 (4th Cir. 1997). "Actual knowledge or awareness on the part of the alleged inflicter . . . becomes essential to proof of deliberate indifference 'because prison officials who lacked knowledge of a risk cannot be said to have inflicted punishment.'" *Brice v. Virginia Beach Correctional Center*, 58 F.3d 101, 105 (4th Cir. 1995) (quoting *Farmer*, 511 U.S. at 844). If the requisite subjective knowledge is established, an official may avoid liability "if [he] responded reasonably to the risk, even if the harm ultimately was not averted." *See Farmer*, 511 U.S. at 844. Reasonableness of the actions taken must be judged in light of the risk the defendant actually knew at the time. *See Brown v. Harris*, 240 F.3d 383, 390 (4th Cir. 2000) (citing *Liebe v. Norton*, 157 F.3d 574, 577 (8th Cir. 1998) (focus must be on precautions actually taken in light of suicide risk, not those that could have been taken)).

Plaintiff clearly suffers from a serious medical condition which limits his mobility and causes chronic pain. Defendants acknowledge those conditions and have provided adequate evidence for this court to find that plaintiff has been provided with a wheelchair, a cane, pain medication, and supplies to address incontinence. On those claims, defendants are entitled to summary judgment.

What is not before the court is any evidence indicating that defendants are addressing the cause of plaintiff's chronic pain by way of evaluation for surgery. There is nothing to indicate that plaintiff's condition has improved since he was initially approved for surgery, thus there does not appear to be a medical reason for the delay. Plaintiff's claim that he is being denied the surgery as a means of retaliation for previously filed lawsuits and without any medical

justification has not been addressed by defendants. Thus, there is a genuine dispute of material fact regarding the surgery claim and summary judgment will be denied without prejudice on that claim. The parties will be provided an opportunity to address that claim as set forth in the separate order which follows.

November 12, 2015                  _____/s/_____
Date                                           James K. Bredar
                                                    United States District Judge